Good afternoon. May it please the Court. My name is Doug Rentschlag, and I represent Ruben Aguallo and Paul Gregoria, who are the defendants and the appellants in this action. And if I may, I'd like to focus on the jury's verdict, the actual verdict on the federal claim in this case, the claim that brings us here, the RICO claim. RICO. And, of course, the RICO statute provides a remedy for a person injured in his business or property as a result of prohibited acts. And in this case, the jury determined that there was such an injury, and the amount of the injury that the jury determined was $1. Now, it's our position that this determination undermines both the jurisdictional basis for RICO liability and the attorney fee award that attaches to it. Regarding jurisdiction, the predicate offense for RICO liability in this case was the Hobbs Act, the extortion statute, which prescribes, prohibits conduct that in any way or degree obstructs, delays, or affects interstate commerce. And we submit to the Court that an injury of $1 doesn't do any of these things. The plaintiffs would like us to look at other facts in the case as to what the jury might have found the injury to be, the $55,000 that was testified that the defendants extracted from the plaintiffs or services that they procured from them. But that is not what the verdict is about. That is not the RICO verdict. The verdict of RICO is $1. And to say that we should be looking at some other number, that it could have been larger, it's a bit like saying that the score of the game should have been more than it was, because the team dominated play and could have scored a lot more touchdowns, or maybe did score and they were disallowed. It's just not appropriate to look at anything other than the number that the jury actually determined. Counsel, Judge Gould, if I may ask a question, please. Yes, Your Honor. Doesn't the jury have a lot of discretion as to how it might want to allocate damages between several claims it found satisfied? Is it possible they just didn't want to tag your clients with treble damages under RICO, so they found the damages under the other claims and put a dollar on RICO? Well, Your Honor, I don't really speculate about what might have been in the jury's mind. I think we have to look at what this claim was and what the verdict on it was, because there might not have been any other claims. We don't know what the jury thought. They could have also thought that the damage to the business was $1, and the rest of the damages were in the nature of emotional distress. We really don't know. And I think we, in the absence of that kind of knowledge, I don't think it's appropriate when we look at the requirement for jurisdiction to assume that the jury might have found a larger amount or that the evidence would support it. Was the jury properly instructed in the jury instructions about the interstate commerce requirement? Is there any challenge to the instructions? Well, there's no formal challenge, Your Honor. I, in reading them over since then, have some questions about it. I don't know that the jury was really told to focus on what the activity of the plaintiffs was, and that's part of our position here, really, in terms of measuring the indirect effect on commerce, because we don't have any use of interstate instrumentality to commit the crime. The jury was instructed that the parties that stipulated that Avis did was interstate commerce. That's true. And don't we have cars at the airport? They do. Of course they are. But the activity, the business that the individuals here were engaged in was a local business working on those cars. And I don't think it's the principle that any service provided to a business that does inter — that is in interstate commerce becomes a business engaged in interstate commerce just because it's providing services to one that is. That's the case here. We have a — Well, what are the people who — so you would say the people at the airport who are selling food in a concession are not in interstate commerce? I don't know that they are. They're selling to people who are traveling, but they are doing a local business. It's just a happenstance that their customers happen to be traveling. I'm not sure what the — how does the damage award really play into this? Because aren't we really looking at the proof at trial that there was activity in interstate commerce rather than the ultimate finding of what damages might have accrued by virtue of that activity? I think, Your Honor, we have to look at what the jury determined the damages to be. What's your best case for that? Well, there was — excuse me? What's your best case for that? That we work backwards from the jury damage verdict. I don't know that there is specific authority on that proposition, but the facts were disputed. The defendants did not admit, they denied and continue to deny, that they extracted any money from these folks. So what the jury believed, we have to look at what they determined because there was a disputed fact. If we assume that the jury concluded something based on one version of the facts before it, then I think we're at C. The — if I may touch on the attorney fee for a moment. So here, too, the $1 recovery, the nominal recovery on the attorney's — on the RICO claim disqualifies this award of attorney's fees from being appropriate here. The RICO statute and what the plaintiffs maintain is the RICO statute says — it speaks in mandatory terms that the court shall award a reasonable attorney fee to a prevailing party. But what it mandates is a reasonable fee. And in determining what is reasonable, the actual result cannot be ignored. And here, the law in this field has been developed under civil rights legislation, and plaintiffs contend that that's not relevant because those statutes provide for attorney's fees in the discretion of the court to the prevailing party. In reality, as the jurisprudence over some 50 years has evolved, as the Court knows, what the discretion relates to is the amount and what's reasonable to award. If a plaintiff prevails in a civil rights case, I don't think a court can say, faced with an actual recovery, that we're going to deny any attorney's fees here because I don't have to award them. I think that would be abuse of discretion. So in this case, the statute really is no different for practical purposes than — and legal purposes than the civil rights statutes. And it's no answer to say, again, that the jury awarded meaningful damages on other fee-generating because we have to look at the fee-generating statute has to generate the fees. That has to stand on its own two feet. And to bootstrap from the recovery on non-fee-generating claims is, to our way of thinking, an inappropriate way of doing it. Where there's a nominal recovery on the RICO claim, the award of attorney's fees, if at all, should be a nominal one rather than the full amount that the district court allowed without any analysis of the result accomplished. A word with respect to the inconsistent verdict in this case, Your Honors. The entire theory on which the extortion claim was based was that it was accomplished by means of a fraud, and the fraud being that the defendants misrepresented to the plaintiffs that they had the power to terminate their relationship with Avis, the plaintiff's relationship with Avis. And that unless they were paid off, they would use that power. And the plaintiffs testified that if they had the only reason they paid that money was that they didn't want that to happen. Well, the jury finds no fraud. And so the extortion that is claimed to have accomplished by means of this fraud seems to us to be inconsistent with the fraud verdict. Now, it's argued that the jury might have found no fraud because maybe they believed that the defendants did not misrepresent, that they actually had that authority. But there's no basis for that. The evidence in the case was that the only person who had any authority to affect the relationship between the plaintiffs and Avis was the manager of the facility. And she said that she had that authority, the only one who did, and she made that decision herself. So it's not a theory that's consistent with what is actually the case. With that, Your Honors, if I can reserve some time for rebuttal. Thank you very much. Afternoon, Your Honors. Blaine Fields for the appellees. I read through the briefs. I'm satisfied with the content. I do have a couple of comments with regard to what I see in the reply. The last sentence in the reply said that, having to do with attorney's fees, there shouldn't be any attorney's fees where a plaintiff has failed to obtain any of the damages they sought. But that is a mischaracterization. The Court looks at the complaint. The complaint was narrowly drawn to allege extortion damages of about $65,000 and emotional distress damages. Plaintiffs received both. Now, in the verdict form, under compensatory damages, we can't know how much of each. We only know what evidence was put on, namely $55,000 in extorted payments, $10,000 in services, and general damages of emotional distress. That amount was no amount suggested to the jury. They had to make that decision for themselves. When the jury rendered its verdict, it rendered a verdict in favor of the plaintiffs on both of those issues. The problem came down when they had to allocate the extortion damages between the extortion claim, the common law claim, and the damages, or calling it business damages. We don't know how they under – how they went about their task, what causes of action they decided first. But clearly, the extortion damages are included in compensatory damages. So to claim that plaintiffs didn't prevail in the case with regard to the damages they claimed is simply not true. They obtained all of the damages that they were capable of obtaining with the pleading in its form. And it could very well be that the jury gave the $1 to avoid the treble damages. I don't know. That would be speculative. But what is not speculative is that the extortion damages are the business damages. That is the only business damages in the case, was the money that was extorted from these people from the money they earned from Avis. Secondly, there is – there was a claim in the reply that the only basis for a predicate act was the Hobbs Act, but that isn't true either. As I read the opening brief, I understood the appellants to claim that the only basis for the only predicate act that was utilized by the trial court was the Hobbs Act, which is true. The trial court didn't mention any other predicate act. But in the statute, there is another predicate act that fits squarely within this the requisite prison sentence. The legal statute requires that or authorizes extortion, State extortion, to be a predicate act if it is punishable by at least one year in State prison. And in this State, we've got the Penal Code Section 518, which provides the same elements that are outlined in Hobbs and in the common law instruction that was given to the jury, and a minimum of two years in State prison. So that in and of itself provides a predicate act. Although I don't think it's required, the Hobbs Act fits to the extent that the appellants claim that there was no evidence of interstate commerce as practiced by this husband and wife team doing car maintenance. That's simply not true. Avis engages in interstate commerce. That was stipulated, and that is what the jury verdict, the instructions say. The plaintiffs in the case did work for Avis on the objects of the interstate commerce, namely the vehicles, maintaining them. In that regard, plaintiffs must engage in interstate commerce. And we cited the Panucci case to the Court, which found that an employee of a company engaged in interstate commerce is himself engaged in interstate commerce. While these weren't employees of Avis, the plaintiffs were independent contractors. But the legal theory is the same, the legal principle is the same. Sotomayor, which claim were the punitive damages? The punitive damages were requested in three, well, actually all four, fraud, extortion, intentional infliction of emotional distress, not RICO. I don't believe RICO. Do we know which jury gave them on? Was it just? Which claim that the punitive damages were? We don't. It was in the compensatory damage section in which all of the damages except that $1 was awarded. They simply indicated $10,000 against each defendant in punitive damages. In that section, all three of those causes of action, extortion, fraud, and potential infliction, were lumped together. The last matter I would bring to the Court's attention, again, looking at the reply brief, has to do with this idea that a dollar doesn't support the attorney fee award. One case that didn't – that was cited in post-verdict briefing at the trial court but didn't make the cut in the responding brief is a case called Rosario. Rosario v. Levoditis, 963 F. 2nd, 1013. And in that case, a verdict was rendered for plaintiffs on a RICO claim with zero dollars, went up on appeal, same arguments were waived. This is in the Seventh Circuit. And the Court sent the case back down for further proceedings on the issue of RICO damages, but affirmed the attorney fee award on zero damages for nearly $300,000 in attorney's fees. There is no case that we found indicating that whether to award attorney's fees on a RICO claim was discretionary, given the language of RICO itself. The cases we found indicated it was a public policy to ensure that attorney's fees were given due to the conduct that was attempting to be prescribed. So I have nothing further for the Court. No questions, Your Honor. Thank you. Thank you. Just briefly, Your Honors. On the what we meant, what I meant in the reply when I said that there was no recovery of any substance in the case, I meant, of course, on the fee-generating claim to determine if it generated fees, not other claims that might have generated damages, but there are no fee, no attorney fee entitlement under them. I don't have the Rosario case well in mind at the moment, I'll confess. I do have in mind the case that counsel did rely on, which is a district court case from Massachusetts, in which they, a district judge, upheld an attorney fee recovery on a RICO claim where a relatively small amount was recovered, but it by no means supports the notion that a de minimis or nominal recovery triggers a significant attorney fee award, because in that case, while the amount was small, it was all that uncommon in those kinds of cases that the amounts per individual are not large. So it's not opposite here at all. As far as the extortion in the state law, that's kind of a new theory that I'm hearing. The case was tried and presented to the jury with the Hobbs Act as the predicate, and I don't think one can change that post hoc. Thank you. Thank you. The matter just argued is submitted for decision. That concludes our calendar. The Court stands adjourned.
judges: Schroeder, Thomas, Gould